IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

United States of America,

v.                                              Case No. 1:21-cr-38-MLB

Fabian Robinson,

           Defendant.

_____/

**OPINION & ORDER**

The United States indicted Defendant Fabian Robinson for participation in an alleged bank fraud scheme from when he was employed at Wells Fargo. (Dkt. 1.) Defendant Robinson filed a motion to suppress statements he made on two occasions—the first involving statements he made to Wells Fargo security officers in September 2017 and the second involving statements he made to FBI Agents in May 2019.[1] (Dkt. 19.) At a conference before the Magistrate Judge, Defendant

---

[1] Both Defendant's motion to suppress (Dkt. 19) and Magistrate Judge Anand's Report and Recommendation (Dkt. 24) refer to the second statement as the "July 2019" statement. That interview occurred on May 30, 2019. The Court thus refers to it as the May 2019 statement.

1

Robinson withdrew his motion as to the first statement. Magistrate Judge Anand thus issued a Report and Recommendation, saying the Court should deny suppression of that statement and deferring the consideration of his arguments regarding the May 2019 statement to this Court.

## I.  Background

In 2017, Defendant Robinson worked at Wells Fargo. At some point, the FBI began investigating his alleged involvement in a scheme to embezzle funds from several Wells Fargo accounts. On May 30, 2019, Federal Agents sought to interview Defendant Robinson at a UPS facility where he was working at the time. That interview lasted about thirty minutes. Defendant Robinson was not under arrest at the time. But in January 2021, the United States indicted Defendant Robinson, charging him with thirteen counts of bank fraud and aggravated identify theft in violation of 18 U.S.C. §§1334 and 1028A, respectively.

Defendant Robinson moved to suppress his May 2019 statement under *Miranda v. Arizona*, 384 U.S. 436 (1965), and *Jackson v. Denno,* 378 U.S. 368 (1968). The Court held a hearing on July 26, 2021 at which the United States presented testimony from Special Agent Doug Curran

about the circumstances surrounding the May 2019 interview. Defendant Robinson filed a post-hearing supplemental motion arguing his statement must be suppressed because he was in custody at the time of the interview and Special Agent Curran failed to advise him of his *Miranda* rights. (Dkt. 33.)

## II. Discussion

Defendant says his May 2019 statement should be suppress because Special Agent Curran violated his *Miranda* rights. (Dkts. 19 at 3; 33 at 4.) He also previously alleged his statements were not voluntarily given but rather were coerced by Special Agent Curran. (Dkt. 19 at 4.) The Court rejects both arguments.

### 1. Defendant Robinson Was Not Subject to Custodial Interrogation

Once placing a suspect in custody, law enforcement may not interrogate the suspect unless they first advise the suspect of his or her *Miranda* rights and the suspect knowingly and voluntarily waives those rights. *Yarborough v. Alvarado,* 541 U.S. 652, 661-63 (2004). The parties agree Special Agent Curran never advised Defendant Robinson of his *Miranda* rights. So, the only question is whether Defendant Robinson was in custody at the time of the interview

3

The answer "depends on whether, under the totality of the circumstances, a reasonable man in [Defendant Robinson's] position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001). The test for custody is objective: "the actual, subjective beliefs of the [D]efendant and the interviewing officer on whether the [D]efendant was free to leave are irrelevant." *United States v. Moya,* 74 F.3d 1117, 1119 (11th Cir.1996). "[U]nder the objective standard, the reasonable person from whose perspective 'custody' is defined is a reasonable *innocent* person." *Id.* (emphasis added). "A defendant is in custody for the purposes of *Miranda* when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting *California v. Behler*, 463 U.S. 1121, 1125 (1983)). The question of whether someone is in custody thus looks at weather a defendant has shown that a reasonable, innocent person facing the totality of circumstances at issue in an objective manner would have felt he or she was unable to leave the interrogation.

The "totality of the circumstances" means the Court must examine all of the circumstances Defendant Robinson faced at the time of the interrogation. But courts have identified several specific factors for consideration, including whether a defendant is in the familiar and comfortable surroundings of his or her home or in a more typically custodial environment such as a police station or patrol car, *see Brown*, 441 F.3d at 1347; whether "the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled," *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006); the duration of the questioning, statements made during the interview, the presence of physical restraints during questioning, and the release of the interviewee at the end of the questioning, *see Howes v. Fields*, 565 U.S. 499, 515 (2012) (internal citations omitted); and whether a suspect was "unambiguously advis[ed] ... that he is free to leave and is not in custody." *United States v. Matcovich*, 522 Fed. Appx. 850, 850 (11th Cir. 2013).

The totality of circumstances show Defendant Robinson was not in custody at the time of the interview. The agents did not brandish their weapons, touch Defendant (other than a possible handshake) raise their

voices or otherwise threaten him in any way. (July 26, 2021 Transcript (hereinafter Tran.) at 22.) Defendant raises no reasonable suggestion to the contrary.[2] Special Agent Curran also explained that Defendant Robinson never seemed agitated, panicky, or upset. (Tran. at 50.) He was cooperative and "amazingly calm" the entire time. (*Id*.) The audio recording confirms this characterization. (Dkt. 31.) While the Court

---

[2] Defendant claims he saw "Agent Curran's revolver on his hip prior to being interrogated and during the course of the interrogation." (Dkt. 33 at 9.) No evidence supports this assertion. Defendant did not testify at the suppression hearing or offer any evidence he allegedly saw the agent's firearm. And the agent testified that he wore his jacket during the interview in order to conceal his firearm. (Tran. at 16, 32.) He never displayed it and did not think Defendant Robinson ever saw it, but could not exclude the possibility his jacket moved and revealed the weapon during the interview. (*Id*. at 32.) This concession by Special Agent Curran speaks to his credibility and offers no evidence Defendant Robinson actually saw the firearm. Finally, Special Agent Curran testified that he carried a semi-automatic Glock, not a revolver. (*Id*.) Some may say this is a minor detail. But Defendant Robinson referred to the firearm as a "revolver" multiple times in his motion to suppress, meaning he could not accurately identify the type of firearm Special Agent Curran carried. (Dkt. 33 at 9.) Having seen Special Agent Curran testify, the Court also finds him completely credible and accepts his testimony he did not display his firearm at any time. At the very end of the suppression hearing, Defendant Robinson raised this same allegation that he somehow saw the firearm. When asked by the Court if he had presented any evidence to support that claim, Defendant Robinson conceded he had not. It is thus strange for him to repeat that allegation in his post-hearing briefing. Practicing law is difficult enough without parties refusing to abide previously acknowledged facts.

6

assesses the circumstances under a reasonable person standard, it is worth noting that none of the circumstances caused Defendant Robinson any noticeable anxiety.[3]

The interview lasted less than thirty minutes. (*Id.* at 52-52; Dkt. 31.) He was interviewed at his place of employment, a place familiar to him. (Tran. at 15.) "Courts are *much less likely* to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home" rather than at a police station. *Matcovich*, 522 Fed. Appx. at 581. Defendant Robinson argues this factor actually weighs in his favor because he was unfamiliar with the exact office or area in the human resources department where the

---

[3] Defendant Robinson claims Agent Curran's questions were "not cordial or controversial but rather accusatory, threatening, and intimidating." (Dkt. 33 at 16.) No evidence supports that. The Court has listened to the recording of the interview several times. It shows beyond any doubt that Special Agent Curran never raised his voice, threatened Defendant Robinson, or spoke unkindly to him. (Dkt. 31.) To the contrary, Special Agent Curran spoke calmly and professionally. Admittedly, he challenged some of Mr. Robinson's answers and explained the seriousness of the criminal activity and the strength of the United States's evidence. That those facts may have been uncomfortable to Defendant Robinson but did not transform the interview into a custodial situation. Agents with strong cases can ask tough questions and challenge what they believe to be patently false or uncredible answers in a non-custodial situation.

interview occurred.  The point is the agents came to him at his place of employment rather than calling him to a police station or FBI office—far more intimidating locations.

Most importantly, Special Agent Curran told Defendant Robinson at the start of the interview that he was not under arrest, was not in custody, and could leave if he wanted.  (Tran. at 39; Dkt. 31.)  He closed the door to the room in which they were meeting for privacy reasons as there was another employee in the adjacent room.  He explained what he was doing.  (Tran. at 50-51.)  The audio recording of the interview confirms this.  Curran told Defendant Robinson "there is not an arrest warrant issued, you are not in custody, you are free to go at any time, we're just in here with the door closed so that, for your privacy, so that they don't hear us talking."  (Dkt. 31 at 3:30-3:52.)  That Special Agent Curran told Defendant Robinson he was not in custody and could leave weighs heavily against Defendant Robinson.  Advising an interviewee that he or she can leave "is a 'powerful factor' that 'generally will lead to the conclusion the defendant is *not* in custody absent a finding of restraints that are so extensive telling the suspect he was free to leave could not cure the custodial aspect of the interview." *Brown*, 441 F.3d at

8

1348. That Special Agent Curran closed the door of the room is irrelevant in the light of the undisputed evidence he explained why he was doing so and (at the same time) told Defendant Robinson he was not under arrest and could leave.

Defendant Robinson seeks to undermine this factor by suggesting Special Agent Curran provided this information only once and in a "purely precursory manner." (Dkt. 33 at 10.) He cites cases in which the Eleventh Circuit noted approvingly that officers gave such a disclosure multiple times. (Dkt. 33 at 11-12.) Neither those cases nor any other suggest agents must advise a defendant repeatedly that he or she is free to leave. Those cases simply outlined their particular facts. The salient point is whether officers inform a defendant he or she is not in custody and may leave the interview at any time. Special Agent Curran did that. After reviewing the tape of the interview, the Court also rejects Defendant Robinson's suggestion Special Agent Curran's disclosure was "precursory," in any way lacking, or needed to be repeated during the short interview.

The Court is not persuaded an innocent, reasonable person in Defendant Robinson's situation would have felt such a restraint on his

9

freedom that he would have concluded he could not leave. He was at his place of employment, was told he could leave, was treated politely and professionally, and never exhibited any sense of duress. No facts suggest his freedom of movement was restrained to the degree associated with a formal arrest.

### 2. The United States Has Shown Defendant Robinson's Statements were Voluntary.

Separate and apart from compliance with *Miranda*, the United States also must establish that a custodial defendant's statements were voluntary. *United States v. Sims*, 719 F.2d 375, 378 (11th Cir. 1983) ("First, the court considers whether the government has complied with the Miranda requirements. Upon finding compliance with Miranda, the court then rules on the confession's voluntariness."); *see also Jarrell v. Balkcom*, 735 F.2d 1242, 1252 & n.11 (11th Cir. 1984) (observing that although *Miranda* and *Jackson v. Denno* protect Fifth Amendment rights, Jackson "raises an issue distinct from the Miranda question in determining a confession's admissibility and [t]hus, even if a court finds compliance with Miranda, the court must still rule on the confession's voluntariness). The voluntariness inquiries focus on whether police overreached the limits of due process and used coercive tactics to extract

an involuntary confession. *Colorado v. Connelly*, 479 U.S. 157, 168–170 (1986). Voluntariness evaluations require the court to analyze both the characteristics of the accused and the details of the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The factors the court must consider include (but are not limited to) "the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police." *Hubbard v. Haley*, 317 F.3d 1245, 1253 (citing *Schneckloth* 412 U.S. at 226). The United States must show the defendant acted voluntarily by a preponderance of evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

While Defendant Robinson cited *Jackson v. Denno* in his initial motion to suppress, thus suggesting he intended to challenge the voluntariness of his statement, he advances no arguments to suggest his statement was involuntary in his post-hearing briefing, instead focusing only on whether the circumstances established a custodial interrogation. Even though Defendant Robinson did not address the issue, the Court has and, after reviewing the totality of the circumstances, finds the United States has shown Defendant Robinson acted voluntarily.

Defendant Robinson had no trouble understanding Special Agent Curran, was not under the influence of alcohol or narcotics, and appeared (at all times) calm and relaxed. (Tran. at 21-24.) The interview was short, Defendant was not handcuffed, and Special Agent Curran neither threatened him, raised his voice, nor attempted to coerce him in any way. (*Id.*) To the contrary, he treated Defendant Robinson respectfully and told him he was free to leave at any time. At one time, he told Defendant Robinson that he needed to "help himself out." (Tran. at 43.) He explained he was "trying to impress upon [Defendant Robinson] the importance of the fact that if he either withheld truthful statements or lied to [the agent] there could be further ramifications down the road." (*Id.*) Agent Curran's statements did not promise Defendant any benefit for testimony so as to overbear his free will, but rather apprised Defendant of legal consequences for certain actions. *See United States v. Quinn*, 123 F.3d 1415, 1424 (11th Cir. 1997) (quoting *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475) (holding federal agent's discussion with defendant of the realistic penalties of his actions did not preclude defendant's free choice to proffer statements to the agent).

## III. Conclusion

The Court **DENIES** Defendant's motion to suppress his May 30, 2019 statement to Special Agent Curran. (Dkts. 19; 33.) The Court also **ADOPTS** the Magistrate Judge's Report and Recommendation denying Defendant's Motion to Dismiss as it relates to the Defendant's 2017 statement. (Dkt. 24.)

**SO ORDERED** this 1st day of October, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE